T. L. NESTOR ET AL. *v.* J. E. DAVIS.

[56 South. 347.]

1. MORTGAGES. *Equitable assignment. Limitation of action. Pleadings. Code 1906, sections 3091, 3092. Fraud. Diligence. Pleadings are construed most strongly against the pleader.*

Where a party pays to a mortgagee of real estate the amount of the debt due him, with the understanding that he was to acquire the interest that the mortgagee owned at the time, this was equivalent to an equitable assignment of the debt.

2. SAME.

In such case the debt was the principal, the deed of trust merely an incident, and the assignment was not an assignment of real estate, or any interest in real estate, but simply an assignment of the debt, and a parol assignment was good.

3. MORTGAGES. *Assignments. Payment or release of debts.*

Whether a given transaction shall operate as a payment, which satisfies and discharges the trust deed, or as an assignment, which keeps it alive, depends not so much upon the language used, or description of the act done, as upon the relations subsisting between the party advancing the money, and others who had or have acquired interest in respect to the property.

4. MORTGAGES. *Redemption. Tender.*

While ordinarily it is necessary for a complainant to tender with his bill seeking to redeem property, the amount due under his mortgage, yet this principal has no application, where an accounting has been shown to be necessary to ascertain the amount due, and especially where the amount is not known to the party

seeking redemption and cannot be ascertained by him because of the fault of his adversary in refusing to furnish information which it is his duty to furnish.

5. LIMITATION OF ACTIONS. *Pleading fraud. Diligence. Code* 1906, *sections* 3091, 3092.

Under Code of 1906, section 3092, providing that when a mortgagee after condition broken, obtains actual possession, the mortgagor or any person claiming through him, cannot sue to redeem the mortgage after ten years from the time of the mortgagee's possession and under section 3091, providing that in case of concealed fraud, the right to bring the action shall be deemed to have first accrued at the time when the fraud might with reasonable diligence have been first discovered. Where defendant, an equitable assignee of the mortgage, had been in possession for more than ten years, and a bill to redeem alleged that the fraud practiced upon complainant's predecessor in interest was not made known to them, and that by the exercise of reasonable diligence, they did not discover it until ten years before the filing of the bill, in such case it is not necessary that the facts shall be set out in the bill, showing what diligence has been exercised by the party to discover the fraud. All that is required is to state in the pleadings that the party has exercised reasonable diligence and has failed to discover it.

APPEAL from the chancery court of Kemper county. HON. J. F. McCOOL, Chancellor.

Bill by J. L. Nestor et al. against J. E. Davis. Bill dismissed on demurrer and complainants appeal.

The facts are fully stated in the opinion of the court.

*Deavours & Shands,* for appellant.

J. N. Davis, the appellee, filed a demurrer to the amended bill of complaint, and alleged as grounds of demurrer the following, to-wit:

1st. Because the amended bill fails to show whether the pretended release of the land in controversy from the deed of trust by Duke Brothers or James Duke was in writing or whether it rested in parol.

2d. Because the amended bill fails to do equity in that it fails to tender or offer to tender to the defendant what he paid for this land.

3d. Because the amended bill fails to show wherein and how the complainants have used due diligence and what they have done to discover their rights in this matter in controversy.

The court sustained the demurrer to the amended bill of complaint, and, the complainants not amending, the bill was dismissed and the complainants now bring the case to this court and assign for error the action of the court below in sustaining the demurrer to the amended bill and dismissing the same.

We have made a full statement of the grounds of demurrer in this brief for the reason that we believe that a reading of the bill and of the demurrer will demonstrate, without the necessity of any extended argument, that the action of the court below in sustaining the demurrer was erroneous; and that the case ought to be reversed and the demurrer overruled and the appellee, the defendant in the court below, required to file an answer.

As to the first ground of demurrer, we merely say that it makes no difference whether the release of the land from the deed of trust was in writing or by word of mouth. In either event it would be valid and binding on Duke Brothers, or Duke, the assignee of Duke Brothers, on Davis, the father of the appellee, the said father being the assignee of Duke, and on Davis, the appellee, who is a mere volunteer in that he does not claim in any other way than as heir of his father. The verbal release of the land was good for the reason, that at the time of this release, the father of the appellant who was the grantor in the deed of trust, turned over and delivered to the holder of the deed of trust, acknowledged payment of the debt except the sum of fifty ($50) dollars, and released from the operation of the deed of trust, the land in controversy. Under the statute of this state, a payment of a deed of trust operates as a cancellation of the same; and a release of property from the deed of

trust of course operates to discharge the property from the lien.

So we say there is nothing in the first ground of the demurrer. A reading of the bill will show that its allegations constitute a full and perfect answer to the second ground of demurrer, which is that the bill fails to show that the appellants have tendered to the appellee repayment of what he paid for the deed of trust. The bill distinctly avers that the deed of trust has long since been paid and largely over paid by the rents and profits that have been collected from the land. What use could there be in tendering to the appellee any sum of money when no sum of money is due him? As a matter of fact the bill shows that the appellee is a mere volunteer in that he holds the land as heir of his father and not otherwise; it is not alleged in the bill that the appellee himself has paid anything; but it is distinctly averred that the ancestor of the appellee came into possession of the land by virtue of the practice by him of a gross fraud and misrepresentation. The ancestor of the appellee is dead, hence, there could be no tender to him. The debt, if any existed, is alleged to have been long since paid, and hence there was no need of a tender. Payment annihilates a debt; and a tender after payment, in whatever way payment may have been made, is a legal impossibility, and the contention made in the demurrer that there should be a tender of debt which it is alleged has already been paid, possesses, to say at least, the quality of being unique and novel.

There is nothing in the third ground of demurrer. The bill alleges that the complainants did not know of the fraud practiced by the ancestor of the appellee until within ten years of the time of the filing of the bill. But regardless of this, the bill does not allege that the appellee now claims to be the owner of the land, nor does it allege that the ancestor of the appellee claimed to be the owner of the land. It is very clear from the

bill that the ancestor of the appellee, and that the appellee himself as the heir of his ancestor, have been simply mortgagees in possession of the mortgaged premises; and nothing can be clearer than that they are, under the law, under the obligation to account to the appellants as the heirs of the mortgagor for the rents and profits of the land; and to turn over and deliver the land to the appellants whenever the debt due them has been paid. And the allegation of payment, as stated above, is clearly made in the bill. There has been no adverse holding of the land by the appellee or his ancestor; it does not appear that the appellee or his ancestor has ever claimed title to the land or that he ever claimed to be owner of the land. So the question of adverse possession or of the trial of the title to the land is not at all involved in this case under the state of the pleadings; nor can such an issue become involved in this case unless it be by virtue of the allegations that may be contained in an answer filed by the appellee. We understand the rule to be, that if a mortgagee goes into possession of mortgaged premises and proceeds to hold possession of the same, to cultivate the same and to collect the rents from the same, he is presumed to hold the same merely as security for his debt and not as owner; and that when his debt is paid his right to hold the mortgaged premises against the mortgagor or the heirs of the mortgagor is at an end; and that he is liable to account to the mortgagor for all sums and amounts received by him arising out of the mortgaged premises, over and above the debt due him and the necessary and proper expenses of preserving and caring for the property. So in this case the appellants contend that the ancestor of the appellee entered into possession of the mortgaged premises as mortgagee and not otherwise, and that the appellee holds possession as a mere volunteer, that is as the heir, under this mortgagee; that the debt has long since been paid and that the mortgagee and

appellee are under the obligation to account to them for the rents and profits of the land over and above the debt and the other proper charges. Upon what theory can it be contended that it is not proper to draw a mortgagee into a court of equity for an accounting after the payment of his debt, is beyond our understanding.

But there is another reason why the bill should have been answered and not demurred to; and this reason is that the bill very clearly and distinctly alleges that the ancestor of the appellee committed a gross fraud in obtaining possession of the property in dispute; that he resorted to gross falsehood, and the exact falsehood told by him and the exact false representation made by him are accurately set forth in the bill of complaint. Unquestionably this clear and plain allegation of fraud and wrong-doing demanded a response in the shape of an answer and not in the shape of a demurrer. It is fundamental law that a bill alleging fraud must be answered, and that a demurrer cannot properly be filed thereto unless it be accompanied by an answer denying the fraud. And so we contend that the demurrer ought to have been overruled in the court below, because no answer has been made to the allegations of fraud contained in the amended bill.

McLain, J., delivered the opinion of the court.

This bill was filed by complainants for the purpose of redeeming certain lands. The facts are that the ancestor of the complainants was the owner of the land, and that he executed to Duke Bros. & Co. a trust deed upon the property for the purpose of securing a debt due by the grantor to Duke Bros. & Co. Shortly before the death of the grantor, which occurred in 1885, the grantor delivered certain property to Duke Bros. & Co. in settlement of the debt, except there remained a balance due of fifty dollars. Shortly after the death of the grantor it is alleged that one Thomas E. Davis, the ancestor

of the defendant, falsely and fraudulently represented to
Duke Bros. & Co. that Mrs. E. W. Nestor, the widow
of the grantor, desired Duke Bros. & Co. to assign to
him, the said Thomas E. Davis, the said deed of trust,
and that said Thomas E. Davis falsely and fraudulently
represented to the said Mrs. Nestor that Duke Bros. &
Co. were preparing to sell the property under the deed of
trust, and, that by reason of such false and fraudulent
representations he prevailed upon the said Mrs. Nestor
to consent to the transfer, and, further that the said
original holders of the debt would not have assigned, but
for the false and fraudulent representations made by the
said Davis. The bill further alleges that the fraud prac-
ticed upon them and their mother by said Davis was not
made known to them, and by the exercise of reasonable
diligence they did not discover the same until ten years
before the filing of this bill; further, that immediately
after the transfer of the deed of trust to Davis he went
into possession of the land, and has been in possession
thereof continually thereafter; and, further, that J. E.
Davis, the defendant, an heir of said Thomas E. Davis,
had full knowledge of all the facts, and has been receiv-
ing the rents and profits of said land; further, that com-
plainants have often requested the defendant to render
an account for the amount he claimed under the said
deed of trust, but the same has been refused; further,
that the rents received by the defendant are more than
sufficient to satisfy the debt. The complainants pray that
an account be taken of what is due the defendant for the
principal and interest on said sum secured by said deed
of trust, and, further, that an account may be taken of
the rents and profits of the said land which have been
received by the defendant, and that upon such an ac-
counting the proper decree shall be rendered. To this
amended bill a demurrer was interposed, sustained, and
the bill dismissed, and the case comes to this court upon
the action of the chancellor in sustaining the demurrer.

While the amended bill is very loosely and inartificially drawn, and while the pleadings are construed most strongly against the pleader, yet we think that the allegations of the bill are such as require an answer.

The first ground of demurrer is that the amended bill fails to show whether "the release of the land in controversy from the deed of trust was in writing, or whether it rested in parol." While the bill alleges that there was an assignment of "the deed of trust, yet we construe the bill to mean that the purpose and intent of the parties was to assign the debt, and that the assignee was to, and could, take only such interest as the beneficiaries in the trust deed had at the date of the assignment. Davis paid to Duke the amount of the debt due him, with the understanding that he (Davis) was to acquire the interest which Duke owned at that time. This was equivalent to an equitable assignment of the debt. The debt was the principal, the deed of trust merely an incident, and the assignment was not an assignment of real estate, or of any interest in real estate, but simply an assignment of the debt. In order for the assignee to have a legal title, the assignment should have been in writing; but the payment of the debt, with the understanding that the payor was to acquire the rights of Duke, constituted an equitable assignment of the debt, and consequently, the parol assignment was good.

The general principles will be found, on an analysis of the case, to be that whether a given transaction shall operate as a payment, which satisfies and discharges the trust deed, or as an assignment, which keeps it alive, does not depend so much upon the language used, description of the act done, as upon the relations subsisting, or that spring up, between the party advancing the money and others who had, or have, acquired interests in respect to the property.

The second cause of demurrer is that the amended bill fails to offer to do equity, in that it fails to tender or

offer to pay the debt, the amount Davis paid for this land. This is an offer to redeem, and while, ordinarily, it is necessary for the complainant to tender with his bill the amount due under the mortgage, yet this principle has no application where an accounting has been shown to be necessary to ascertain the amount due, and especially where the amount is not known to the party seeking redemption and cannot be ascertained by him because of the fault of his adversary in refusing to furnish information which it is his duty to furnish. *Aust* v. *Rosenbaum,* 74 Miss. 893, 21 South. 555.

The third cause of demurrer is that the amended bill fails to show wherein and how the complainants have used due diligence, and what they have done to discover their rights in the matter in controversy. Under section 3092 of the Code of 1906, which is simply a rescript of the former statutes, when a mortgagee, after condition broken, shall obtain the actual possession, the mortgagor, or any peron claiming through him, cannot bring a suit to redeem the mortgage, unless brought within ten years after the time at which the mortgagee obtained such possession. The facts show that Davis had been in possession of the land for more than ten years, and the object and purpose of the allegation in the bill is to avoid this limitation; and, under section 3091 of the Code, this can be done by showing that in every case of a concealed fraud the right to bring the action shall be deemed to have first accrued at and before the time at which the fraud shall, or with reasonable diligence might, have been first known or discovered. And while it is necessary to state the facts which constitute a fraud, so as to let the court judge as to whether a fraud was perpetrated or not, yet the rules of pleading do not require that the facts shall be set out in the bill, showing what diligence has been exercised by the party to discover the fraud. All that is required is to state in the pleading that the party has exercised reasonable diligence and has failed

to discover it. Of course, when the case comes on for hearing, it will be necessary for the party to satisfy the court by evidence that he has exercised this reasonable diligence, and, if he fails so to do, then he is not entitled to the exception engrafted upon the statute.

Cause reversed, and defendant allowed sixty days from the filing of the mandate in the court below in which to answer the bill.                                     *Reversed.*